1
2024 CO 70 The People of the State of Colorado, Petitioner: v. Francine Erica Segura. Respondent: No. 22SC816Supreme Court of Colorado, En BancNovember 4, 2024
2

         
Certiorari to the Colorado Court of Appeals Court of Appeals
Case No. 20CA1785

3

         
Attorneys for Petitioner: Philip J. Weiser, Attorney General
Majid Yazdi, Senior Assistant Attorney General Denver,
Colorado

         
Attorney for Respondent: Erin Wigglesworth Denver, Colorado

         
Attorneys for Amicus Curiae Office of Alternate Defense
Counsel: The Noble Law Firm, LLC Antony Noble Lakewood,
Colorado

4

         
JUSTICE SAMOUR DELIVERED THE OPINION OF THE COURT, IN WHICH
CHIEF JUSTICE MARQUEZ, JUSTICE BOATRIGHT, JUSTICE HOOD,
JUSTICE GABRIEL, JUSTICE HART, AND JUSTICE BERKENKOTTER
JOINED.

5

         
OPINION

         
SAMOUR, JUSTICE

         ¶1
When a rule "is as clear as a glass slipper and fits
without strain, courts should not approve an interpretation
that requires a shoehorn." Demko v. United
States, 216 F.3d 1049, 1053 (Fed. Cir. 2000) (making the
comment with respect to the interpretation of a statute).
Instead, in such a situation, our task is simply to apply the
rule - i.e., "merely to put [the glass slipper] on the
foot where it belongs." Lexington Ins. Co. v.
Precision Drilling Co., 830 F.3d 1219, 1220 (10th Cir.
2016) (stating this in the context of statutory
interpretation).

         ¶2
Rule 35 of the Colorado Rules of Criminal Procedure provides
postconviction remedies a defendant may seek.[1] As relevant here,
section (c)(3) of the rule allows a defendant to "file a
motion . . . to vacate, set aside, or correct the
sentence" based "on one or more of the grounds
enumerated in section (c)(2)." Crim. P. 35(c)(3). One of
the grounds listed in section (c)(2) is the ineffective
assistance of trial counsel. Crim. P. 35(c)(2).

         ¶3
Paragraphs (I) through (IX) of section (c)(3) then delineate
the procedures that must be followed in filing and resolving
Crim. P. 35(c) motions. The procedures in paragraphs (IV) and
(V) are at the hub of this opinion.

6

         ¶4
Under paragraph (IV), if the court concludes that the motion,
the record, and the file show that the defendant is not
entitled to relief, it must deny the motion without
forwarding a copy to the prosecution and the Office of the
Public Defender ("OPD"). Crim. P. 35(c)(3)(IV). But
if the court does not so conclude, then paragraph (V)
requires the court to forward a copy of the motion to the
prosecution and, if the motion requests the appointment of
counsel, then also to the OPD. Crim. P. 35(c)(3)(V). The OPD
must then file a response within forty-nine days indicating
whether it has a conflict of interest and, if not, whether it
intends to enter its appearance and whether it needs more
time to investigate the defendant's claims. Id.
If the OPD enters its appearance, it must include in its
response any additional claims that have arguable merit.
Id. After the motion (as supplemented by the OPD)
has been fully briefed, an evidentiary hearing must be held
unless the court finds it appropriate to dispose of the
motion without a hearing. Id.

         ¶5
In this case, the defendant, Francine Erica Segura, filed a
pro se Crim. P. 35(c) motion raising multiple ineffective
assistance of trial counsel claims and requesting the
appointment of postconviction counsel. But the trial court
followed neither of the paths outlined in paragraphs (IV) and
(V). Instead, it took a middle-of-the-road approach: It
denied all but one claim and then forwarded a copy of the
motion to the prosecution and the OPD with instructions
limiting the OPD's

7

appointment to the lone surviving claim. Because the OPD had
a conflict of interest, an attorney from the Office of
Alternate Defense Counsel ("OADC") was appointed as
postconviction counsel.[2] That attorney filed a supplement to the
pro se motion with respect to the one claim within the
limited scope of her representation. Following an evidentiary
hearing on that claim, the court denied Segura's request
for postconviction relief. A division of the court of appeals
reversed the trial court's order in part, and we granted
the prosecution's petition for writ of
certiorari.[3]

         ¶6
The prosecution now asks us to read a hybrid path into Crim.
P. 35(c)(3)(IV)-(V) -one which allows trial courts to (1)
deny some (but not all) of the claims raised in a pro se
motion requesting counsel without first forwarding a copy of
it to the prosecution and the OPD, and then (2) appoint the
OPD solely on any remaining claims. We decline to do so
because the plain language of Crim.

8

P. 35(c)(3)(IV)-(V) does not support such an interpretation.
Much like Cinderella's stepsisters couldn't wedge
their feet into the glass slipper, the prosecution can't
force this fit into Crim. P. 35(c)(3)(IV)-(V), no matter how
hard it wiggles.

         ¶7
We hold that when, as here, a defendant files a pro se Crim.
P. 35(c) motion that contains a request for counsel, the
trial court has two, and only two, choices. First, it may
conclude, based on its review of the motion, the record, and
the file, that none of the claims has arguable
merit, in which case it must deny the motion in its
entirety without further action by entering written
findings of fact and conclusions of law. Second, it may
conclude, based on its review of the motion, the record, and
the file, that at least one claim has arguable
merit, in which case it must grant the request for
postconviction counsel and forward a complete copy
of the motion to the prosecution and the OPD. The OPD must
then determine which claims (if any) lack arguable merit and
should be abandoned, which arguably meritorious claims (if
any) should be supplemented, and which new claims (if any)
have arguable merit and should be added.

         ¶8
Thus, upon its initial review of a postconviction motion like
the one filed by Segura in this case, the court must either
deny the motion and thus all of the claims, or not deny the
motion and thus none of the claims-there is no betwixt and
between option. And if the court denies none of the claims,
it may not restrict the scope of postconviction counsel's
representation.

9

         ¶9
Because the division was spot-on in ruling that the trial
court violated Crim. P. 35(c)(3)(IV)-(V), and because the
prosecution does not challenge the division's conclusion
that the error was not harmless, we affirm. We remand the
case with instructions to return it to the trial court for
further proceedings consistent with this opinion.

         I.
Facts and Procedural History

         ¶10
Segura and two others carried out an armed home invasion
robbery. The prosecution later charged her with multiple
crimes. Following a jury trial, she was convicted of two
counts of second degree kidnapping and one count of
aggravated robbery. The court then sentenced her to 111 years
in prison.

         ¶11
Segura appealed, but a division of the court of appeals
affirmed her conviction and sentence, and our court
thereafter denied her petition for certiorari. After the
mandate issued, Segura timely filed a Crim. P. 35(b) motion
asking the trial court to reconsider her sentence. The trial
court did so and reduced her sentence to seventy-three years.

         ¶12
From prison, Segura later filed a pro se Crim. P. 35(c)
postconviction motion. She advanced various claims of
ineffective assistance of trial counsel and requested the
appointment of postconviction counsel. In a separate
pleading, Segura reiterated her request for the appointment
of postconviction counsel.

10

         ¶13
Upon its initial review of Segura's Crim. P. 35(c)
motion, the trial court denied ten of her eleven claims. The
sole surviving claim dealt with trial counsel's alleged
ineffective assistance in plea negotiations. As to that
claim, the court granted Segura's request for
postconviction counsel. Consequently, it forwarded a copy of
the motion to both the prosecution and the OPD. But the court
was clear: The OPD was "appointed" only on the
remaining claim.

         ¶14
Because the OPD had a conflict of interest, an attorney with
the OADC entered her appearance on Segura's behalf with
respect to the single claim on which the court appointed
counsel. Thereafter, consistent with the court's
restriction on the scope of her representation,
postconviction counsel submitted a supplemental Crim. P.
35(c) motion focusing exclusively on the ineffective
assistance claim grounded in the parties' plea
negotiations. The supplemental motion contended that: (1)
trial counsel had failed to convey to Segura the plea offers
and the deadlines to accept them; and (2) to the extent that
trial counsel had shared all pertinent information about the
plea offers, Segura did not understand the penalties she was
facing or the full benefit of those offers.

         ¶15
After the supplemental motion was fully briefed, the court
held an evidentiary hearing limited in scope to the
ineffective assistance claim related to plea negotiations. At
the end of the hearing, the court took the matter under
advisement. In a subsequent written order, the court denied
Segura's request for

11

postconviction relief, concluding that her trial counsel had
not been ineffective in discussing the plea offers with her
or in explaining the possible penalties with respect to the
charges brought against her.[4]

         ¶16
Segura appealed, arguing, as relevant here, that the trial
court erred by limiting postconviction counsel's
representation and denying most of the claims without a
hearing. The division affirmed in part and reversed in part.
People v. Segura, No. 20CA1785, ¶ 1 (Sept. 15,
2022). It affirmed the portion of the trial court's order
denying Segura's claim that her trial counsel had been
ineffective in handling plea negotiations. Id. at
¶ 40. But it reversed the remainder of the order,
concluding that the trial court had violated Crim. P.
35(c)(3)(IV)-(V) and improperly restricted postconviction
counsel's representation. Id. at ¶¶
16, 40. Thereafter, the prosecution sought our intervention,
and we accepted its petition for writ of certiorari.

         ¶17
Before turning our attention to the certiorari issue, we
address the prosecution's preservation contention and
articulate the standard that guides our review.

12

         II.
Preservation and Standard of Review

         ¶18
The prosecution maintains that the issue we confront was
forfeited by Segura and is thus subject to plain error
review. According to the prosecution, Segura failed to
preserve the issue because she didn't object to the trial
court's restriction on the scope of postconviction
counsel's representation. We note that the prosecution
took a run at convincing the division of the same contention.
It didn't succeed. And it doesn't succeed here
either, albeit for a different reason.

         ¶19
The division ruled that Segura's request for the
appointment of postconviction counsel sufficed to preserve
her assertion that the trial court erred in sidelining
counsel's representation on all but one claim.
Segura, ¶ 22. Thus, the division rejected the
prosecution's forfeiture claim. Accordingly, it reviewed
de novo the trial court's reading of paragraphs (IV) and
(V) and, having found error, it employed the harmless error
standard of reversal. Id. at ¶¶ 22-23.

         ¶20
Because the prosecution chose not to ask us to review the
division's determination vis-a-vis preservation, that
issue is not properly before us. See Berge v. Berge,
536 P.2d 1135, 1136 (Colo. 1975) (declining to consider an
issue not raised in the petition for writ of certiorari);
Jagged Peak Energy Inc. v. Okla. Police Pension &Ret.
Sys., 2022 CO 54, ¶ 63, 523 P.3d 438, 453 (same).

13

Therefore, we assume without deciding that Segura properly
preserved the issue for review.[5]

         ¶21
We review the lower courts' construction of paragraphs
(IV) and (V) de novo. Hunsaker v. People, 2021 CO
83, ¶ 16, 500 P.3d 1110, 1114 (stating that our court
enjoys "plenary authority to promulgate and interpret
the rules of criminal procedure," and that we review de
novo the construction of those rules, using the same canons
available for the interpretation of statutes (quoting
People v. Bueno, 2018 CO 4, ¶ 18, 409 P.3d 320,
325)). As we do with a statute, we first read the language of
a rule "consistent with its plain and ordinary meaning,
and, if it is unambiguous, we apply the rule as
written." People v. Steen, 2014 CO 9, ¶
10, 318 P.3d 487, 490. To determine whether a lower
court's error in interpreting Crim. P. 35(c) warrants
reversal, we inquire whether the error was harmless.
People v. Davis, 2012 COA 14, ¶ 13, 272 P.3d
1167, 1170 (applying the harmless error

14

standard of reversal to the district court's failure to
comply with the procedural requirements of Crim. P.
35(c)(3)(V)).

         III.
Analysis

         ¶22
As its title suggests, Crim. P. 35 provides
"[p]ostconviction [r]emedies" a defendant may seek
in a criminal case. Section (a) addresses requests to correct
illegal sentences; section (b) deals with motions for the
reduction of sentences; and section (c), the section
pertinent here, discusses "[o]ther [r]emedies."
Section (c)(3) states that a defendant who has been aggrieved
and is asserting "either a right to be released or to
have a judgment of conviction set aside on one or more of the
grounds enumerated in section (c)(2) . . . may file a motion
. . . to vacate, set aside, or correct the sentence."
The parties agree, as do we, that Segura's argument that
she's entitled to have her judgment of conviction set
aside is grounded in claims that come within the purview of
section (c)(2).

         ¶23
Where the parties part ways is in the interpretation of the
procedures that govern the filing and resolution of pro se
Crim. P. 35(c) motions containing a request for
postconviction counsel. Paragraphs (I) through (IX) of
section (c)(3) set forth those procedures, which include the
following:

(IV) The court shall promptly review all motions that
substantially comply with Form 4, Petition for Postconviction
Relief Pursuant to Crim. P. 35(c).... If the motion and the
files and record of the case show to the satisfaction of the
court that the defendant is not entitled to relief, the court
shall enter written findings of fact and conclusions of law
in denying the motion....

15

(V) If the court does not deny the motion under (IV) above,
the court shall cause a complete copy of said motion to be
served on the prosecuting attorney if one has not yet been
served by counsel for the defendant. If the defendant has
requested counsel be appointed in the motion, the court shall
cause a complete copy of said motion to be served on the
Public Defender. Within 49 days, the Public Defender shall
respond as to whether the Public Defender's Office
intends to enter on behalf of the defendant pursuant to
§ 21-1-104(1)(b), 6 C.R.S. In such response, the Public
Defender shall identify whether any conflict exists, request
any additional time needed to investigate, and add any claims
the Public Defender finds to have arguable merit. Upon
receipt of the response of the Public Defender, or
immediately if no counsel was requested by the defendant or
if the defendant already has counsel, the court shall direct
the prosecution to respond to the defendant's claims or
request additional time to respond within 35 days and the
defendant to reply to the prosecution's response within
21 days. The prosecution has no duty to respond until so
directed by the court. Thereafter, the court shall grant a
prompt hearing on the motion unless, based on the pleadings,
the court finds that it is appropriate to enter a ruling
containing written findings of fact and conclusions of law.
At the hearing, the court shall take whatever evidence is
necessary for the disposition of the motion.

Crim. P. 35(c)(3).

         ¶24
The prosecution contends that, upon initial review of a pro
se Crim. P. 35(c) motion requesting postconviction counsel, a
trial court has the authority under paragraph (IV) to deny
any claim that lacks arguable merit and to then proceed under
paragraph (V) with respect to any claim that is arguably
meritorious. But the plain and ordinary meaning of the
rule's language saps the prosecution's argument.

         ¶25
Paragraph (IV) addresses situations in which review of the
motion, the record, and the file satisfies the trial court
that the defendant is not entitled to any

16

relief -i.e., that none of the claims advanced has arguable
merit.[6] It directs the trial court to deny such a
motion without further action through written findings of
fact and conclusions of law. Paragraph (V), in turn, applies
"[i]f the court does not deny the motion under
(IV)." Crim. P. 35(c)(3)(V). In other words, paragraph
(V) is triggered if paragraph (IV) is inapplicable because
the court concludes that at least one claim in the
defendant's motion has arguable merit. And under
paragraph (V), if the motion contains a request for counsel,
"the court shall cause a complete copy of said
motion to be served on the [OPD]." Id.
(emphasis added).

         ¶26
Thus, upon its initial review of a Crim. P. 35(c) motion
containing a request for postconviction counsel, the court
must either deny the motion and thus all of the claims, or
not deny the motion and thus none of the claims -there is no
halfway option. And if the court denies all of the claims, it
must enter written findings of fact and conclusions of law
without taking further action. But if the court denies none
of the claims, it must grant the request for postconviction
counsel and forward a complete copy of the motion to the
prosecution and the

17

OPD. The OPD must then decide which claims (if any) lack
arguable merit and should be abandoned, which arguably
meritorious claims (if any) should be supplemented, and which
new claims (if any) have arguable merit and should be
added.[7] The parties must thereafter brief any
arguably meritorious claims, including those supplemented and
added.[8]

         ¶27
Perhaps recognizing that the plain and ordinary meaning of
the rule's language (adopting an all-or-nothing approach)
is not its friend, the prosecution asks us to focus on
"the rule's overall scheme." According to the
prosecution, the rule is silent on the scope of a trial
court's authority with respect to motions that include
both arguably meritorious claims and claims lacking arguable
merit. Contrary to the prosecution's position, however,
there is no gap in the rule for us to bridge. Any hybrid
motion containing both arguably meritorious claims and claims
that lack arguable merit is a motion a court may not deny
under paragraph

18

(IV). Instead, such a motion is governed by paragraph (V),
which addresses motions that contain at least one claim with
arguable merit.

         ¶28
The prosecution insists, though, that it is illogical for a
trial court to lose the authority to deny a claim lacking
arguable merit under paragraph (IV) simply because the motion
also includes a claim that has arguable merit. Be that as it
may, our role here is to interpret and apply the rule as
written, not to consider whether logic warrants a revision.

         ¶29
In any event, we disagree that our view of the rule's
scheme is illogical. If a trial court concludes that a
request for postconviction counsel in a Crim. P. 35(c) motion
must be granted because the motion contains at least one
claim with arguable merit, why is it illogical to forward the
entire motion to the OPD for its review of all the claims?
The OPD can then take a closer look at the motion and
determine which claims (if any) to abandon, supplement, and
add. In this regard, we're mindful that defense counsel
typically has access to more information than the court in a
criminal case. Of course, whether this is the ideal approach
is debatable-reasonable minds may differ on the optimal
procedure-but it is certainly not illogical.

         ¶30
We are equally unmoved by the prosecution's argument that
our interpretation of paragraphs (IV) and (V) will lead to
inefficiency and waste of judicial resources because it will
require a trial court to proceed "with all the
claims

19

raised in a pro se motion even if it finds . . . that only
one claim has arguable merit." Again, this
argument goes to the wisdom of the rule, so this is the wrong
forum in which to raise it. At any rate, the time it takes a
trial court to conduct its initial review of a relevant
motion may actually be reduced under the
interpretation we embrace here. Take this case for example.
Once the trial court concluded that Segura's motion set
forth at least one claim with arguable merit, there was no
need to review the remaining claims.

         ¶31
True, it's possible that after postconviction
counsel's review, there may be more claims to litigate,
which would likely increase the time it takes to resolve the
motion. But those will all necessarily be claims that
postconviction counsel represents have arguable merit. Should
we sacrifice such claims in a criminal case based on concerns
over judicial economy and limited resources? We think not.

         ¶32
Lastly, the prosecution seeks refuge in the limited nature of
the statutory right to postconviction counsel. It urges us to
declare that its proposed approach is consistent with the
principle in Colorado jurisprudence that the statutory right
to postconviction counsel is limited. But the
prosecution's effort flounders because the limited nature
of the statutory right to postconviction counsel is in
lockstep with the plain and ordinary meaning of the language
of paragraphs (IV) and (V).

         ¶33
The statutory right to postconviction counsel is
"tenuously premised on an interpretation of the statutes
creating and governing the [OPD] and requiring that

20

office to prosecute post-conviction remedies which have
arguable merit." Silva v. People, 156 P.3d
1164, 1168 (Colo. 2007) (quoting with approval People v.
Hickey, 914 P.2d 377, 378 (Colo.App.
1995)).[9] In Silva, we noted that section
21-1-104(1)(b), C.R.S. (2024), requires the OPD to
"[p]rosecute any appeals or other remedies . .
. after conviction that the [OPD] considers to be in the
interest of justice." Silva, 156 P.3d at 1168
(first alteration in original) (emphasis added). Continuing,
we said that decades earlier a division of the court of
appeals had read the "other remedies" statutory
language as including arguably meritorious Crim. P. 35(c)
motions. Id. (referring to the division's
decision in People v. Duran, 757 P.2d 1096, 1097
(Colo.App. 1988)). We adopted the same reading because we
inferred that it had been ratified by our General Assembly.
Silva, 156 P.3d at 1168.

         ¶34
Thus, as the prosecution points out, our court in
Silva didn't interpret "other
remedies" in section 21-1-104(1)(b) as encompassing all
Crim. P. 35(c) motions. Id. Rather, we recognized
that the statutory right to postconviction counsel extends
only to Crim. P. 35(c) motions that are arguably
meritorious. Id. More specifically, we
determined that a defendant has no right to the appointment
of postconviction counsel in conjunction with a Crim. P.
35(c) motion if (1) the trial court concludes that the motion
is "wholly unfounded," or (2) the OPD concludes
that the Crim. P. 35(c)

21

motion lacks arguable merit. Id.; see also
§ 21-1-104(2) ("In no case, however, shall the
state public defender be required to prosecute any appeal or
other remedy unless the state public defender is satisfied
first that there is arguable merit to the proceeding.");
People v. Breaman, 939 P.2d 1348, 1351 (Colo. 1997)
("A court-appointed public defender does not have a duty
to prosecute a claim for post-conviction relief after
determining that there is no arguable merit to the
defendant's claim."); Colo. RPC 3.1 ("A lawyer
shall not bring or defend a proceeding, or assert or
controvert an issue therein, unless there is a basis in law
and fact for doing so that is not frivolous ...."). In
other words, the court and the OPD both "must find that
a defendant's Crim. P. 35(c) motion has arguable merit
before the statutory right to postconviction counsel is
triggered." Silva, 156 P.3d at 1168.

         ¶35
These limitations, however, are entirely consistent with our
construction of paragraphs (IV) and (V). If the trial court
finds that a pro se Crim. P. 35(c) motion is wholly unfounded
(i.e., that all of the claims in the motion lack arguable
merit), it must deny the relief requested without further
action by issuing written findings of fact and conclusions of
law. Crim. P. 35(c)(3)(IV). But if the trial court finds that
a pro se Crim. P. 35(c) motion is not wholly unfounded (i.e.,
that at least one claim in the motion has arguable merit), it
must appoint the OPD and forward a complete copy of the
motion to that office and the prosecution. Crim.

22

P. 35(c)(3)(V). The OPD must then determine which claims (if
any) lack arguable merit and should be abandoned, which
arguably meritorious claims (if any) should be supplemented,
and which new claims (if any) have arguable merit and should
be added.[10]

         ¶36
In short, nothing about the limited nature of the statutory
right to postconviction counsel dissuades us from our
interpretation of paragraphs (IV) and (V). Where, as here,
the language of a rule of criminal procedure is unambiguous,
we are duty bound to effectuate its plain and ordinary
meaning. Steen, ¶ 10, 318 P.3d at 490.

         ¶37
This is not to say that the clock has struck midnight on any
alternative procedures for handling pro se Crim. P. 35(c)
motions. We reiterate that we pass no judgment on the
sagacity of paragraphs (IV) and (V). Our job today is simply
to interpret and apply those paragraphs as they are currently
written. That's just what we've done.

23

         IV.
Conclusion

         ¶38
For the foregoing reasons, we conclude that the division
correctly determined that the trial court violated the
procedures set out in Crim. P.
35(c)(3)(IV)-(V).[11] And because the prosecution does not
challenge the division's determination that this error
was not harmless, we affirm.

         ¶39
We thus remand the matter to the division with instructions
to return it to the trial court for further proceedings
consistent with this opinion. When the trial court receives
the case again, it need not deal with the ineffective
assistance claim related to the parties' plea
negotiations, as that claim has been fully adjudicated. But
the trial court must permit postconviction counsel to review
the ten remaining ineffective assistance claims.
Postconviction counsel must then determine which claims (if
any) lack merit and should be abandoned, which arguably
meritorious claims (if any) should be supplemented, and which
new claims (if any) have arguable merit and should be added.
If counsel decides to move forward with any claims, they must
be briefed, and once fully briefed, the court must decide
whether to hold a hearing before resolving them.

---------

Notes:

[1] There is also a statute that addresses
postconviction remedies. See § 18-1-410, C.R.S.
(2024). In this case, however, we are concerned only with
Crim. P. 35.

[2] We infer that the references to the
OPD in Crim. P. 35(c)(3)(IV)-(V) include the OADC when the
OPD has a conflict of interest. See §
21-2-101(1), C.R.S. (2024) ("[T]he alternate defense
counsel shall provide legal representation in circumstances
in which the state public defender has a conflict of interest
in providing legal representation."). For brevity's
sake, when we discuss Crim. P. 35(c)(3) in general terms in
this opinion, we simply refer to the OPD.

[3] The prosecution raised, and we agreed
to review, the following issue:

1. Whether a postconviction court violates Crim. P.
35(c)(3)(IV) and (V) by summarily denying some of the claims
raised in a pro se motion and limiting the scope of appointed
counsel's representation to claims that survive summary
denial.

[4] The court also found that trial
counsel had not been ineffective in failing to communicate to
Segura any plea offer sufficiently in advance of the
offer's expiration deadline. Although Segura raised this
specific claim for the first time at the hearing, we do not
address its untimeliness here because it doesn't affect
our analysis.

[5] We recognize that in People v.
Tallent, 2021 CO 68, ¶ 11, 495 P.3d 944, 948, we
said that "an appellate court has an independent,
affirmative duty to determine whether a claim is preserved
and what standard of review should apply, regardless of the
positions taken by the parties." But context matters. In
Tallent, we had to determine whether we were bound
by the parties' agreement and the division's
assumption that an issue was preserved. We refused to have
our hands tied by the parties or the division. Here, by
contrast, there is no agreement on whether Segura preserved
her claim, and the division explicitly rejected the
prosecution's contention that she failed to do so. Yet,
the prosecution elected not to include the preservation issue
in its petition for writ of certiorari. Having made its bed,
the prosecution must lie in it.

[6] In conducting this initial review, the
trial court should consider, among other things, whether the
motion: is timely; fails to state adequate factual or legal
grounds for relief; states legal grounds for relief that lack
merit; states factual grounds that, even if true, don't
entitle the defendant to relief; and states factual
allegations that, if true, entitle the defendant to relief,
but the files and records of the case satisfy the court that
those allegations are untrue. Crim. P. 35(c)(3)(IV).

[7] Paragraph (V) requires the OPD to
indicate whether it needs additional time to investigate. We
infer from this language that the OPD may supplement any
arguably meritorious claims advanced by the
defendant.

[8] The division read Crim. P.
35(c)(3)(IV)-(V) as requiring an evidentiary hearing whenever
a trial court concludes during its initial review of a pro se
motion that at least one claim has merit and that a request
for postconviction counsel should thus be granted. See
Segura, ¶¶ 11-12, 16. This is incorrect. Even
if, upon an initial review, the court declines to deny such a
motion outright, it may subsequently resolve the motion
without a hearing after any arguably meritorious claims
pursued by postconviction counsel have been fully briefed.
See Crim. P. 35(c)(3)(V).

[9] The statutes creating and governing
the OPD are §§ 21-1-103 and 21-1-104, C.R.S.
(2024).

[10] We realize that under our analysis,
the OPD could be appointed as postconviction counsel on a
claim that the OPD later concludes lacks arguable merit and
should be abandoned. But this is inevitable under any system.
The OPD's appointment is necessary at the front end to
allow it to review any motions that the trial court has
determined are not wholly unfounded. The same result would
obtain under the prosecution's approach: The OPD could be
appointed to pursue a claim that the trial court finds has
arguable merit, but the OPD might subsequently conclude that
the claim lacks arguable merit after all and should be
abandoned.

[11] To the extent that People v.
Terry, 2019 COA 9, 488 P.3d 459, and other decisions
from the court of appeals are inconsistent with this opinion,
they are hereby overruled.

---------